McCLURE *v.* DETROIT SOUTHERN RAILROAD CO.

146 457
f152 ³ 90

1. MASTER AND SERVANT — PERSONAL INJURIES — LIABILITY OF MASTER—EXISTENCE OF RELATION.

Where, at the time of an injury to an employé of railroad car shops, the railroad company defendant has, as between itself and its predecessor, assumed full control of the property constituting the railroad and taken upon itself the operation thereof, it occupies the position of an undisclosed principal with respect to the duty it owes to employés not apprised of the change of ownership, and is therefore liable to such employés for its own negligent acts; the question in such case being not so much a question of contract right as of duty owed.

2. SAME—SCOPE OF EMPLOYMENT.

An employé of railroad shops, in the woodworking department, who had occasionally been called out of the shops to assist in clearing wrecks and to repair cars, *held*, not called out of the line of his regular employment by being instructed to assist in raising a loaded car in the yard on jacks for the purpose of repairing it.

3. SAME—FELLOW-SERVANTS—INCOMPETENT FOREMAN.

A foreman of a car repairing gang in railroad yards is the fellow-servant of an employé of the shops temporarily called out to assist in repairing cars, and the company is not liable for injuries to the servant resulting from such foreman's negligence unless the foreman is incompetent and the company is at fault in employing him.

4. SAME—NOTICE TO MASTER.

Where, immediately preceding an injury to a servant of a railroad company, there was a change of ownership of the property constituting the railroad, but the officers and employés by order continued in their several stations, notice to the master mechanic of the incompetence of a foreman car repairer, received before the change of ownership, continued to be notice thereafter, and bound the succeeding owner.

5. SAME—ASSUMPTION OF RISK—OBVIOUS DANGER.

Whether the danger of going under a loaded freight car, one end of which has been raised up on jacks and the trucks removed, the car standing without other supports or braces, is

so obvious that the servant so doing pursuant to order assumes the risk thereof, *held*, a question for the jury, in view of evidence that the foreman giving the order was incompetent.

Error to Lenawee; Chester, J. Submitted June 15, 1906. (Docket No. 48.) Decided December 3, 1906.

Case by Lucy A. McClure, administratrix of the estate of Robert J. McClure, deceased, against the Detroit Southern Railroad Company for the negligent killing of plaintiff's intestate. There was judgment for plaintiff, and defendant brings error. Reversed.

*Dickinson, Stevenson, Cullen, Warren & Butzel*, for appellant.

*W. J. Ingersoll* and *John E. Bird*, for appellee.

MONTGOMERY, J. The plaintiff recovered at the circuit damages under the death act for the death of her husband on the ground that such death was caused by defendant's negligence. On the 1st day of June, 1901, decedent was employed in defendant's car shops at Tecumseh, and was directed by the foreman in charge to go into the yards of the company to assist in the repair of a loaded freight car. The repairs consisted of replacing the drawbar at each end of the car. The work was done under the immediate direction of the foreman of the car department, George Sollers. The men employed were ordered and directed by Sollers, the car foreman, to take the drawbar out of the north end of the car and replace it with a new one. The car stood on a north and south track. The north end of the car was run up by jacks under either corner and wooden horses were placed beneath the car to help sustain its weight. Some difficulty was experienced in getting out the pin which held the car to the trucks, and Sollers, the foreman, ordered that the car be jacked up higher. This was done, but was not followed up by any blocking on top of the horses. The pin was finally

released and the trucks were run out from under the car, and, while the end of the car rested alone upon the two jacks, Sollers ordered the men to get in under the car and go to work. McClure obeyed the order and was just in the act of stooping down to get in under the car when the north end of the car slued to the west and fell to the ground, falling upon McClure and killing him instantly. T. M. Downing was the master mechanic and had full charge of the company's business at the shops, and George Sollers was the foreman of the car department, and Sollers was otherwise known and spoken of as the master car builder. There was testimony tending to show that Downing had knowledge that Sollers was not a competent foreman, and said so to witness Dooley, but excused his retention on the ground that he got lots of work out of the men and that he was all right as a driver, but he was no mechanic.

The grounds of negligence relied on were, briefly, as follows: That McClure was wrongfully ordered out of the department in which he was employed to work into another department to perform other and more dangerous work with which he was unacquainted and did not appreciate without first informing him of the dangers incident to said work and how to avoid them; that the defendant failed to exercise due care in the employment of foreman Sollers, and that he was incompetent to the knowledge of defendant.

It is insisted by defendant's counsel:

(1) That the relation of master and servant was not shown to exist between McClure and defendant.

(2) That the deceased, at the time of his injury, was acting within the line of his employment.

(3) That there is no competent testimony to show that defendant was guilty of a wrong in the employment of Sollers or his assistants.

(4) That the danger to which McClure was subjected was obvious.

1. It appears that prior to June 1, 1901, the railroad

properties and shops connected therewith had been operated by the Detroit & Lima Northern Railway Company. By an order issued on that day the defendant's president stated that the defendant "had acquired all the property of the D. & L. N. and that possession is hereby assumed," adding, "Officers, agents, and employés are requested to continue in the discharge of their several duties unless otherwise ordered." The evidence is not clear that notice of this order had been brought home to Mr. McClure before his injury, or that the local agents or employés knew of it. There was, however, testimony tending to show that one of the cars of the Detroit & Lima Northern had, before this date, been relettered in the Tecumseh shops with the name of the defendant. An inference might be open from this that the deceased and other employés knew of the change. However this may be, the defendant evidently had, as between its predecessor and itself, assumed full control of the property and taken upon itself its operation. It thereby, as to the *duty it owed to the employés,* occupied the position of an undisclosed principal. The court below was right in holding that, if the defendant company was in fact operating the properties at this time, it was liable as master. *Smith* v. *Belshaw,* 89 Cal. 427; *Crusselle* v. *Pugh,* 67 Ga. 430. The question in such case is not so much a question of contract right as it is of the duty owed. Cases cited, supra.

2. Was the decedent called out of the regular line of his employment to perform work not contemplated by the employment? This question was submitted to the jury by the circuit judge. The testimony shows that a car repair shop was maintained at Tecumseh, consisting of a woodworking department, paintshop, etc. It is the claim of defendant, and its testimony tended to show, that cars were brought to the shop for repair, and that the employés in the woodworking department assisted in such repairs and in jacking up cars as occasion demanded; that at times they were (including McClure) called out of

the shop on the road where wrecks had occurred to perform similar service, and it is insisted that this testimony is uncontradicted and shows that decedent's employment included such work.   Plaintiff called two witnesses to show what decedent's employment was.   Robert Hastings, who was McClure's boss, and who, referring to the work on the car on the day in question, testified:

" I had never been engaged in this kind of work before, nor had McClure been engaged in this kind of work, not as I know of."

On cross-examination he testified as follows:

" Well, to the best of my judgment, I don't think he [McClure] was out very much.   He went out on wrecking gangs two or three times; something like that.   I didn't go with him, and don't know what he did on those trips.   They usually have a derrick, a couple of pairs of trucks, some jacks and blocks, and so on."

Dooley, who preceded Sollers as foreman, testified that McClure's duty was assisting Hastings in the woodworking shop.   On direct examination he testified as follows:

" His [McClure's] duty was helping Mr. Hastings. Previous to that he had regular work in the paintshop. After he got into the woodworking shop he used to go out in the yard and bore holes in sills, and put on grabirons, and lift pins, and such things as that, and once in a while carry out timbers and go under the car and cut out a piece that didn't happen to fit right; he would go under the car and cut it out.   He was not engaged in this class of work of car repairing, raising cars, not loaded cars, to my knowledge."

When this testimony is read in connection with testimony of defendant's witnesses that McClure, when out of the shop working on wrecks, was one of the crew engaged in jacking up cars, it is manifest that the general scope of his employment included work of this character.   It was error to permit the jury to find that he was, on the occasion of his injury, ordered outside the line of his employment.

3. It follows from this that Sollers and McClure were fellow-servants, and that, for the personal acts of negligence of Sollers, the defendant is not responsible to McClure's representatives, unless it be found that the defendant was at fault in the employment of an incompetent servant in Mr. Sollers. This was claimed, and that question was also submitted to the jury. There was testimony tending to show that Sollers was incompetent. The method adopted of bringing home notice to the defendant company was to offer in evidence a declaration of Mr. Downing, the master mechanic of the predecessor company, and who continued in defendant's employ on June 1st. This was objected to, and it is insisted that any declaration of Downing at that time would be hearsay. It was not competent evidence of the fact of Sollers' incompetency, but, if such incompetency was otherwise shown, we think such a statement by Downing was as competent to show notice to him of such competency as would have been a communication made to him. The only doubt which could exist arises out of the change of employers after the declaration was made, but we think this circumstance does not render it incompetent. The testimony was competent to show notice or knowledge on Downing's part of Sollers' incompetency. When the change of ownership took place Downing continued in a position in which notice to him was notice to the master. Bailey on Master's Liability for Injuries to Servant, p. 66; *Ohio, etc., R. Co.* v. *Collarn*, 73 Ind. 261. If, at the time of the injury, this superior servant possessed the knowledge, the result is the same as though it were then for the first time communicated to him. Wade on Notice, § 687 et seq.

4. Was the risk so obvious that McClure should be held to have assumed the risk? The case is near the border line, but we think the fact, if it be the fact, that the deceased was ordered under the car by one in authority who was incompetent, is to be taken into account in determining whether deceased was negligent in

not informing himself of the danger.   *Walker* v. *Railway Co.*, 104 Mich. 606.

The other questions presented are not likely to arise on a new trial.   For the error pointed out, the judgment is reversed, and a new trial ordered.

Grant, Blair, Ostrander, and Moore, JJ., concurred.