### HILGBRANDT *v.* OVAL WOOD DISH CO.

1. MASTER AND SERVANT—FELLOW-SERVANTS—NEGLIGENCE.

   An employee of a wood products factory, who was a member of the crew which unloaded logs from cars in the yard and who knew the method employed in doing the work, assumed the risk of any negligence of his co-employees in the crew in failing to chain or bind up a car load of logs from which a portion had been removed, and he could not recover for injuries caused by logs being jarred off the car while it was being switched about.

2. SAME—RISKS ASSUMED—PERSONAL INJURIES.

   Where plaintiff and other members of the crew were all so situated that they knew how the work was done, and all the operations were apparent and the dangers obvious, plaintiff assumed the risk of the action of his foreman in

taking plaintiff from his work of unloading and placing him in charge of the team which moved cars about, part of his duties being to stop the moving cars of logs by means of a block, which, when used, jarred off logs upon him.[1]

3. SAME—WARNING AND INSTRUCTING EMPLOYEE.
    The direction of the foreman, changing plaintiff's work from unloading to driver of a team which transferred the cars from one skidway to another, without warning or advising plaintiff of the hazards of his work, did not effect such a change in employment as that it could be held to have taken plaintiff out of the scope of his employment, where other members of the crew had also been put in charge of the team.

4. SAME—FELLOW-SERVANT RULE—SUPERIOR SERVANT.
    And the foreman was a fellow-servant of the plaintiff, although he had authority to hire and discharge men.

Error to Grand Traverse; Mayne, J. Submitted June 5, 1913. (Docket No. 34.) Decided March 28, 1914.

Case by Adelbert Hilgbrandt against the Oval Wood Dish Company for personal injuries. Judgment for plaintiff, and defendant brings error. Reversed, new trial denied.

*Parm C. Gilbert* and *Thomas Smurthwaite*, for appellant.

*Covell & Cross*, for appellee.

McALVAY, C. J. This suit was brought to recover damages for an injury plaintiff claimed to have been caused by the negligence of defendant, and a trial of the issue resulted in a verdict against defendant, upon which a judgment was duly entered. The case is before this court for review, defendant and appellant

---

[1] As to servant's assumption of risk in obeying orders to perform obviously dangerous work, see note in 4 L. R. A. (N. S.) 830. And for servant's assumption of obvious risks of hazardous employment, see note in 1 L. R. A. (N. S.) 272.

seeking a reversal on account of alleged errors committed upon the trial.

Defendant operated at Traverse City, Mich., a mill and factory in the production of wood dishes and other hard-wood products, principally from beech and maple sawlogs, which are brought to the factory on railroad cars and are delivered on a railroad siding which runs into defendant's logyard. These cars are placed by defendant's employees where required for sorting and unloading at the proper skidways; the cars being moved from place to place by a team kept for that purpose. The beech logs are placed upon the beech skidway and the maple logs upon the maple skidway, more commonly called the iron skidway. These skidways are about two car lengths from each other. The logs put upon the iron skidway are rolled into a pond of warm water, called "the soup hole," and from this place are taken up the slide into the factory for manufacture.

Plaintiff, at the time of his injury, was employed by defendant and was a member of the crew which had charge of unloading these cars and sorting these logs, moving the cars where desired, from place to place, for that purpose. The cars, after being unloaded, were moved some distance from the factory and left to be taken in charge by the railroad employees. All the movement of the cars after delivery by the railroad is done by a team of horses and one of this crew of men as a driver by hooking a chain to the car and pulling it along the track to the place where needed, the driver carrying a stick or block to drop in front of the wheels of the car to stop it as desired. This crew doing this work in the logyard usually numbered about six men.

The foreman of this crew, of which plaintiff was one, was Mr. Watson, who had worked for the defendant for some time and had a right to hire and dis-

charge men, subject to the approval of the superintendent. This foreman scaled the logs, and the balance of the time worked with the crew, helping in different parts of the yard at whatever they were doing. The loaded cars were brought into defendant's yard on a side track by the railroad company, usually once a day, and about 15 loaded cars at a time. It was the duty of this crew each day to unload these cars. When they were delivered the cars were loaded, and the logs secured on the cars with chains just as they had been loaded and chained in the woods. These were flat cars upon which the logs were loaded, having stakes along each side 16 or 18 inches high. The cars were long enough to receive two lengths of logs, which were rolled on, covering the entire car. Over these logs binder chains were placed, fastened on each side, and upon them as many other logs were rolled as would finish the load, which top logs held the chains and bound the load fast. When the cars were unloaded they were moved to the skidways as stated, according to convenience, as the loads happened to be made up. If beech logs were on top the car would be moved first to the beech rollway, and all such logs unloaded as could be handily taken off, and then the car would be moved and maple logs unloaded at the iron skidway. In doing this unloading the logs were necessarily shifted around. When the top logs were unloaded the chains were untoggled to get at the bottom tier, which would be unloaded in such manner at such skidway as would be proper for that class of logs. As the cars were moved from place to place, after the binding chains had been unloosed, the remaining logs on a car would be rebound or not as in the judgment of those who were unloading seemed necessary. All of the members of this crew worked together, taking part in the different portions of the work necessary to be done to accomplish the unloading of these

cars, each day. Plaintiff had worked as a member of this crew at this work in the logyard for about a month or six weeks before his injury. He had never before driven the team in moving cars. On the day in question he had been told by the foreman to drive the team. In doing this work he carried in his hand a stick, or block, which he selected for that purpose, which he used to block the wheels of the car to stop it at the proper place, when notified by the other men. This continued during the day until some time in the afternoon, when, in moving a car, which had been partly unloaded, from one of the beech skidways to the iron skidway, standing with his back toward the car, not looking at it or the logs on it, he used his block to stop the car at the proper place, jarring two of the logs off the car, which struck plaintiff on his legs, throwing him down on his face upon the ground, and caused the injury for which he seeks to recover.

The sole negligence charged by plaintiff and relied upon in the declaration is that he was put at work by the foreman outside the scope of his employment, with the dangers incident to which he was unacquainted, and without notice or warning of such dangers. The dangers referred to are that the cars were moved from one skidway to another after the binding chains had been removed, and some logs unloaded without refastening such chains to prevent logs from rolling off from the cars, and by reason of which negligence he suffered his injuries.

Appellant, in presenting its reasons why the judgment against it should be reversed, has grouped the errors duly assigned and relied upon, among others, as follows: The danger was obvious, and plaintiff assumed the risk. The negligence, if any appears in the record, was the negligence of fellow-servants. As has been said in the statement of facts, and as appears from the testimony of plaintiff, he was a member of

this crew of men which unloaded the cars and decked the logs in defendant's yard for about a month before this accident. The skidways were alongside of the car track, and men on the cars rolled the logs off onto the skidways, where plaintiff and others decked them up (which means arranged them in tiers on the skidways). During all this time plaintiff, as one of this crew, assisted in and saw how the work was done. From his testimony he was not engaged in rolling logs from the cars, but in handling them on the skidways after they left the cars; for all the time he was engaged in such work he was situated where he could observe and know how the crew handled the logs in unloading a car and in doing all of the work in relation thereto.

In deciding a motion which was made at the close of plaintiff's case to direct a verdict for defendant, for the reasons that the dangers incident to the work were obvious and could be seen and appreciated by plaintiff, that the negligence, if any, was that of fellow-servants, which included the foreman, and on the ground of contributory negligence, the court, in denying the motion, among other things, found the following facts:

"In the business of defendant as conducted, it is shown conclusively, for the purpose of this motion, that the defendant had furnished a safe place and suitable appliances. That they were sufficient, if used, to insure the safety of the employees, barring unaccountable accident. The logs had been brought from a distance upon those same cars, and had been bound and held in place with the same chains and stakes. This applies until they arrived at the beech skidway. At this point the beech logs or a portion of them as was convenient were removed. For years—I assume from the evidence, those logs that remained on the cars had been moved a few feet to the iron skidway where the maple logs were unloaded from the cars. There is no question as to the competency of the men who unloaded those cars, and, as I said, there is no question as to

the sufficiency of the appliances, nor as to the safe place, and there is no question but that the business had been conducted in such a way that no injury had befallen any workman, and no accident had occurred during all the years that the business had been run there. This was the condition on March 13th when the plaintiff was employed to drive the team which hauled the cars from the beech siding—skidway, to the iron skidway."

It is apparent that it is unnecessary to digest the testimony at length as to the character of this work and how it was performed. There is no question of safe place involved, nor of proper instrumentalities. There is no dispute in the testimony but that plaintiff and the other members of the crew were all so situated in performing this work as to know how it was done, and all of the operations could be seen and appreciated by the plaintiff. He must be held to have assumed the risk.

The record clearly shows that the foreman and the other members of the crew were engaged in a common occupation in unloading logs from the cars and placing them on different skidways in defendant's logyard. The several members of the crew helped with different parts of the work, and were changed from one place of the work to another as occasion required. Under the facts proven we think the relation of the foreman to the employer and men was like that of a section foreman, and that he was a fellow-servant with plaintiff within the decisions of this court.

The court was requested to charge that the foreman and other men were fellow-servants, and if there was any negligence on the part of either or any of them, it was the fault or negligence of a fellow-servant. It requires no citation of authorities to sustain the proposition that all of the members of this crew, except the foreman, were fellow-servants, and

180 MICH.—4.

the authorities sustain the proposition that the foreman under such circumstances was a fellow-servant. *McClure* v. *Railroad Co.*, 146 Mich. 457 (109 N. W. 847) ; *Corey* v. *Iron Co.*, 151 Mich. 558 (115 N. W. 737), and cases cited.

The fact that on the day in question he was sent from the work on the skidway by the side of the car to drive team in moving the car cannot be said to have been beyond the scope of his employment. His testimony recognizes that he was one of the men engaged at this work, and moving the car was but a part of the work; the record showing also that this had been done by several of the men.

In deciding the motion referred to, and also in charging the jury, the court held that a custom had been established by this crew of men, in moving cars from one rollway to another, to do so without rebinding the load with the chains, and that plaintiff's claim was that he was ignorant of that custom, and therefore the court refused to take the case from the jury. We do not find in the declaration any such claim of negligence. The only ground of negligence, as already stated, was that plaintiff was not warned, in being put outside the scope of his employment, of the dangers attending the new work. If the declaration may be construed to include this ignorance of a custom, it is obvious from what we have said that the negligence was the negligence of one of plaintiff's fellow-servants. The learned trial judge was in error in not granting the motion referred to, and in also not charging the jury as requested.

For the reasons given, the judgment is reversed, and, as no different case can be presented under the admitted facts in this record, no new trial will be granted.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.