CHAPMAN *v.* ANN ARBOR RAILROAD CO.

1. MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.

Under the Federal employers' liability act an employee assumes the usual and ordinary risks incident to his employment.

2. SAME—QUESTION FOR JURY.

It was a question for the jury whether plaintiff assumed the risk, in an action under the Federal employers' liability act to recover for injuries received while plaintiff was, with other employees, unloading heavy timbers from a railroad car, one of which, without warning, shot out of the car and struck plaintiff.

3. DAMAGES—EXCESSIVE VERDICT—PERSONAL INJURIES.

A verdict for $1,800 for pain and suffering, loss of time, and injury to two fingers of plaintiff's right hand, resulting in ten to twenty per cent. loss of efficiency thereof, held, not excessive.[1]

4. SAME—EVIDENCE.

The verdict *held*, not against the weight of the evidence where there was a sharp conflict of evidence.

Error to Shiawassee; Miner, J. Submitted January 19, 1917. (Docket No. 34.) Decided June 1, 1917. Rehearing denied September 28, 1917.

Case by James L. Chapman, an infant, by Amelia Voss, his next friend, against the Ann Arbor Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Gustavus Ohlinger* and *S. Q. Pulver* (*Alexander L. Smith,* of counsel), for appellant.

*George E. Pardee* and *Roy M. Chrouch,* for appellee.

[1] On excessiveness of verdicts for personal injuries other than death, see comprehensive notes in L. R. A. 1915F, 30.

This action is brought by James L. Chapman, through his guardian, Amelia Voss, against the defendant railroad company under the Federal employers' liability act for injuries received while in the employ of the defendant on August 20, 1915, in the city of Owosso, Mich.

Plaintiff had been working for the defendant since August 3, 1915, and on the day in question was employed, together with three other men, in unloading bridge timbers from a freight car. These bridge timbers were about 10 feet long and 10 inches square, and weighed between 300 and 400 pounds, and lay lengthwise in the car. Two of the men worked inside the car, and two on the outside to receive the timbers as they were rolled onto a skid by the men on the inside. This skid was a timber one end of which rested on the middle of the sill of the car door, and the other end on the ground, and later, as the timbers were unloaded, on the pile of unloaded timbers. One of the men in the car would place a roller under one end of the timber, and the other man would push the timber onto the skid. The men on the outside stood on each side of the skid, and, as the timber came into view, would steady it down the skid and lift it onto the pile.

On the day in question, plaintiff and the other three men had been unloading timbers from this car all day. A few minutes before the accident, the car had been switched to allow the passing of a train and then switched back again to its original position. During the operation, plaintiff, who was working on the outside of the car, got into the car together with his companions. After the car was switched back into position, plaintiff jumped to the ground, assisted in replacing the skid against the doorsill, and stood by the side of the skid with his right hand on the pile of timbers on the ground and with his head turned slightly away from the car. While in this position, a timber

shot out of the car door without any warning and struck the pile of timbers at the point where his hand was resting and injured it. It was the explanation of the men in the car that one of them had just placed the roller under the end of the timber, which was up on top of the pile in the car, and the other man started to push, the intention being to lower the front end onto the floor or onto the skid, when the timber, by reason of its weight, got away from them and went out of the door as described.

There was conflict in the testimony regarding a custom of the men inside the car warning those outside the car when a timber was to be shoved out. As to the injury to plaintiff's hand, it appeared that a portion of the bone of the third or ring finger was crushed at the middle joint and had to be removed; but no portion of that or any other finger had to be amputated. When the ring finger was healed, it had a sidewise flexion of about 10 per cent. and a flexion toward the palm of about 25 per cent. The little finger was anchylosed in the middle joint, causing a flexion toward the palm of the hand. It is claimed that the entire injury resulted in a loss in the efficiency of the hand of from 10 to 20 per cent., and there was evidence to the effect that the injury was permanent and might grow worse.

The trial court submitted the case to the jury, after overruling defendant's motion for a directed verdict, and a verdict was returned for the plaintiff for $1,800. The defendant thereupon moved for a new trial on the ground that the verdict was against the weight of the evidence, that the amount of the verdict was gross and excessive and out of proportion to the actual damages proved, and that the court had erred in overruling the motions for directed verdicts. The court overruled the motion, but made the following order as to the amount of the verdict:

"That if the defendant shall within 60 days deposit with the clerk of this court the amount of $1,500 or a certified check for that amount payable to the plaintiff, then the plaintiff shall receive the same. In case he refuses, a new trial shall be granted, without costs to either party."

KUHN, C. J. (*after stating the facts*). The principal question raised by appellant's assignments of error relates to the alleged error of the trial court in overruling defendant's motion for a directed verdict in its favor. It is based upon the contention that, as the common-law defense of assumption of risk is retained under the Federal employers' liability act, except where a statute enacted for the safety of employees is violated, under the evidence in this case it should be held that the plaintiff assumed the risk as a matter of law. In this connection, it was claimed that the timber which caused the injury was taken from a high position in the car; that the plaintiff stood in a position where he could, if he had merely turned his head, have looked into the car and seen what was going on there; that it was one of the obvious risks that the plaintiff assumed that the timber might pass beyond the control of the men; that an ordinarily prudent person would have looked in the direction of the car; and that the danger would have been obvious to him.

The trial judge submitted the question of whether the risk was a usual or ordinary one to the jury with the following instructions:

"Now, the defendant claims that the plaintiff assumed all of these risks when he entered the employment of the defendant. Now, the law upon that is, by virtue of the contract of service between the plaintiff and defendant, the plaintiff assumed the usual and ordinary risk incident to the employment. He assumed the usual and ordinary risk incident to the employment; that is, such risks as were usual and ordinary. Those he assumed. Such risks that he knew of, or by

the use of ordinary precaution ought to have known.
I will read that again.   The plaintiff, by virtue of the
contract of service between the plaintiff and defendant, the plaintiff assumed the usual and ordinary risk
incident to the employment.

"So, in this case, if what happened there that day
about the timbers coming out was usual and an ordinary incident, plaintiff assumed them; or if it is such
an incident that plaintiff knew would happen, or by
the use of ordinary precaution ought to have known,
then he would have assumed them, and he could not
recover in this case."

It was the contention of the plaintiff, and there was
evidence to support it, that after a period of rest it
was usual to warn the party on the outside before a
timber was put out, and it is claimed that if the men in
the car had given that warning the accident would not
have occurred.   We are of the opinion that whether
the plaintiff should have known of the danger, and
whether the danger was so obvious that as a person
of ordinary care and diligence he would have apprehended it, and, failing to do so, that he assumed the
risk, was a question of fact for the jury and was
properly submitted to them by the trial court.   *Walker*
v. *Railway Co.*, 104 Mich. 606 (62 N. W. 1032) ; *Balhoff* v. *Railroad Co.*, 106 Mich. 606 (65 N. W. 592) ;
*Thomas* v. *Railroad Co.*, 114 Mich. 59 (72 N. W. 40) ;
*Shadford* v. *Railway Co.*, 121 Mich. 224 (80 N. W.
30) ; *Nichols* v. *Railroad Co.*, 145 Mich. 643 (108 N. W.
1016) ; *McClure* v. *Railroad Co.*, 146 Mich. 457 (109
N. W. 847) ; *Huber* v. *Electric Co.*, 168 Mich. 531 (134
N. W. 980) ; *Gila Valley, etc., R. Co.* v. *Hall*, 232 U. S.
94 (34 Sup. Ct. 229) ; *Texas & Pac. R. Co.* v. *Harvey*,
228 U. S. 319 (33 Sup. Ct. 518) ; *Seaboard Air Line
Railway* v. *Horton*, 233 U. S. 492 (34 Sup. Ct. 635).

Defendant's counsel also urge that the trial court
erred in overruling defendant's motion for a new trial
on the ground that the amount of the verdict was excessive.   Considering the pain and suffering which the

record shows the plaintiff endured, his loss of time, his disfigurement and humiliation because thereof, we are not prepared to say that the verdict was so excessive as to warrant our interfering with the judgment of the jury.

Other assignments of error relate to errors in the introduction of evidence and to the claim that the verdict was against the weight of the evidence. There was a sharp conflict of evidence as to there being a custom to warn, but we are not satisfied that the verdict is against the weight of the evidence under the rule announced in *Gardiner* v. *Courtright*, 165 Mich. 54 (130 N. W. 322), and since repeatedly cited with approval.

It not having been made to affirmatively appear, after an examination of the entire cause, that the verdict and judgment resulted in a miscarriage of justice, it is unnecessary to discuss the assignments of error with reference to the introduction of evidence.

The judgment is affirmed.

STONE, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred with KUHN, C. J.

OSTRANDER, J. (*concurring*). The trial judge, in the instruction concerning assumption of risk by the plaintiff, in the last clause quoted in the opinion of the Chief Justice, used an illustration—made an explanation—which made the whole instruction erroneous. There was a risk that a timber might, without negligent conduct of the men in the car, escape their control. It seems to me this cannot be doubted. But what happened there was not a usual or ordinary *incident*. Fortunately, most of the risks assumed by workmen do not culminate in injury. And when the court said, "If what happened there that day about the timbers coming out was usual and an ordinary incident, plaintiff assumed them, or if it is such an inci-

dent as plaintiff knew would happen," * * * everything before that stated upon the subject was improperly qualified, to defendant's prejudice.   A correct charge would have been that plaintiff assumed the risk that, without negligence on their part, the timbers might escape from the control of the men in the car. The complaint made by appellant, however, is, not that the charge is faulty in the respect pointed out, but that the court should have charged the jury, generally, that plaintiff assumed the risk, a position emphasized by the form of appellant's request to charge upon this subject.

I concur in holding that whether plaintiff assumed the risk was a question for the jury, and that the judgment should be affirmed.

STONE, BIRD, and STEERE, JJ., concurred with OSTRANDER, J.   MOORE, J., did not sit.