## The Fort Worth & Denver City Railway Company v. A. R. Whitehead.

### No. 358.

**Common Carrier — Interstate Shipment. —** Where the proof shows merely that a common carrier engaged only in carrying between points in the same State received goods shipped from outside the State, and carried them to their destination within the State, and it does not appear that the carrier was engaged in such transportation under a common control, or arrangement for their continuous carriage from the initial point of shipment to their destination, an act of interstate commerce is not shown.

Appeal from Wise.    Tried below before Hon. J. W. Patterson.

*Stanley, Spoonts & Meek,* for appellant.—If the shipments of coal in question were made from Lehigh, Indian Territory, over the Missouri, Kansas & Texas Railway and the Fort Worth & Denver City Railway,

on through bills of lading from Lehigh, Indian Territory, to Decatur, Texas, and if the defendant shipped by virtue of said bills of lading without any other or additional contract for the shipment of said cars, then the rate of freight fixed by the Texas Railway Commission would not be applicable. Gen. Laws, 22nd Leg., 55; Railway v. Dwyer, 75 Texas, 572; Railway v. People, 118 U. S., 557; Ferry Co. v. Pennsylvania, 114 U. S., 196; Railway v. Commissioners, 16 Am. and Eng. Ry. Cases, 1.

*Carswell & Woody*, for appellee.—To make this case involve an interstate shipment, something more must be shown than the fact that the freight had been previously shipped from a point without the State. Acts 22nd Leg., p. 64, secs. 17, 22a, 23; Railway v. Illinois, 118 U. S.. 557.

STEPHENS, Associate Justice.—By the judgment appealed from, appellee recovered against appellant the sum of $451, as penalty and damages for an overcharge of freight on a shipment of coal from Fort Worth to Decatur, as provided in the Railway Commission law of Texas, the charge being in excess of the rate fixed by the commission under that law.

The judgment entry recites, that the defendant company, having filed answer, appeared by attorney and presented the same, and after the court overruled the exceptions contained therein, made no further appearance in the cause. At a subsequent day of the term appellant moved to set aside this judgment, stating an excuse for not being represented on the trial by an attorney duly authorized, and also setting forth its defense on the merits. This motion was overruled, and to that action of the court error is assigned.

The excuse alleged did not, so far as we can determine, materially differ from that held to be insufficient in the case of the Western Union Telegraph Company v. Brooks, 78 Texas, 331. The court, however, held against the motion on the ground that it failed to show a meritorious defense, and not for want of diligence.

The defense offered was, that the shipment in question was an interstate shipment, and therefore not within the scope of State regulation. To support this contention, appellant alleged that the coal had been transported from Lehigh, in the Indian Territory, to Decatur, Texas. Accompanying its motion were the following exhibits, attested by the affidavit of its agent at Decatur, to the effect that they were the original bills of lading of the coal shipment mentioned in the pleadings of plaintiff and defendant, being through shipments, as stated in said defendant's pleadings, to-wit:

"Lehigh, I. T., November 14, 1891.

"THE MISSOURI, KANSAS & TEXAS RAILWAY.

"Received of the Southwestern Coal and Improvement Company the following cars of coal, to be transported to T. C. & C. M. Co. at Decatur, via Fort Worth and F. W. & D. Ry.   Notify waterworks:

| Initials. | Car Nos. | Description. | Net weight. |
|-----------|----------|-------------|-------------|
| M. K. T. | 11,959<br>S. A. | 1 Car Nut Coal.<br>Ord. 46. | 48,000 |

"W. N. Straull, Agent.
"B."

"Lehigh, I. T., January 14, 1892.

"THE MISSOURI, KANSAS & TEXAS RAILWAY.

"Received of the Southwestern Coal and Improvement Company the following cars of coal, to be transported to the order of Texas Coal and Coal Mining Company at Fort Worth, for Decatur, via F. W. & D. C. Ry. Notify A. R. Whitehead:

| Initials. | Car Nos. | Description. | Net weight. |
|-----------|----------|-------------|-------------|
| M. K. T. | 3741<br>S. A. | 1 Car McJames Lump.<br>Ord. 558. | 30,300 |

"W. N. Straull, Agent.
"B."

It did not offer to show that it had authorized or ratified such through shipment, nor that it was engaged in transportation under a common control, management, or arrangement for a continuous carriage from the Indian Territory to Decatur or other Texas points.

As we construe the motion, it failed to show by the facts alleged that in transporting the coal in question it was engaged in interstate carriage. We will not undertake to support this conclusion by a review of the long line of cases bearing upon a subject already sufficiently obscured by judicial expression.

The elaborate opinions, both of the majority and the dissenting minority of the Federal Supreme Court, in the case of the Wabash Railway Company v. Illinois, 118 United States, 557, reviewing the numerous cases previously decided by that court, and coming to opposite conclusions, left the subject in a state of painful incertitude; and probably lead to the definition contained in the first section of the Interstate Commerce

Law, by which the provisions of that act were restricted to common carriers engaged in transportation "under a common control, management, or arrangement for a continuous carriage or shipment from one State or Territory into another," etc.

This section, in thus carefully limiting the scope of the act, manifests, we think, an intention on the part of Congress to define the boundaries of Federal regulation of the carriage of interstate commerce, so as to invite and secure the necessary State and Territorial co-operation. As expressed by the Interstate Commerce Commission in its first report to Congress under the act as amended in 1889, in speaking of the utility of State and Territorial boards and commissions, "when the act was passed, Congress was very careful not to interfere with the working of these commissions, and shaped its legislation so as to leave a clear field for action to the State and Territorial authorities." In line with this interpretation, that commission, in the case of Missouri and Illinois Railway, Tie and Lumber Company v. Railway Company (1 I. C. C. R., 30), held, that a shipment between two points in Missouri, and destined, within the knowledge of the initial carrier, to a point beyond that State, did not make its carriage interstate, there being no common control or arrangement between the connecting carriers. Subsequently, however, in the case of the Railway Commission of Georgia v. Clyde Steamship Company et al. (5 I. C. C. R., 369), in construing the first section of the act, this language was used:

"The receipt successively by two or more carriers for transportation of traffic shipped under through bills for continuous carriage over their lines, is assent to a common arrangement for such continuous carriage or shipment, and previous formal arrangement between them is not necessary to bring such transportation under the terms of the law. Traffic is either State or interstate traffic, according to its origin and destination. It is shipped by the consignor in the State where the consignee dwells, or it is not. If not, it is interstate traffic; and when carried over two or more lines it is by the fact of having been received, forwarded, and delivered as one through shipment, transported under a common control, management, or arrangement, as the case may be, for continuous carriage or shipment."

The latitudinous construction indicated by this language obliterates, we think, the boundary fixed by the phrase "under a common control, management, or arrangement," and does not seem to accord with the latest important decisions of the Federal courts on the question. In the case of Kentucky and Indiana Bridge Company v. Louisville & Nashville Railway Company, 37 Federal Reporter, 613, Judge Jackson, with the concurrence of Judge Barr to that extent, after announcing that the Interstate Commerce Commission "is neither a Federal court under the Constitution, nor does it exercise judicial powers, nor do its conclusions possess the efficacy

·of judicial proceedings," held, that the Interstate Commerce Law "does not undertake to create between connecting lines such an agency or quasi partnership relation as is necessarily involved in agreements or arrangements for the establishment of through routes and the making of through rates;" and that in the absence of traffic arrangements between the Louisville & Nashville Railway and the Kentucky and Indiana Bridge Company and the railways using its tracks, the former had a right to treat freights tendered it at Louisville as local Louisville business.

The case most directly in point, however, is that of the Interstate Commerce Commission v. Cincinnati, New Orleans & Texas Pacific Railway Company et al., decided last June, 56 Federal Reporter, 925. The case, the question, and conclusion of. the court are thus stated by Judge Newman:

"The facts appear to be, that goods were shipped from Cincinnati to Social Circle, on through bills of lading issued by the Cincinnati, New Orleans & Texas Pacific Railway Company, and were carried over the Cincinnati, New Orleans & Texas Pacific Railway, the Western & Atlantic. Railway, and the Georgia Railway, to Social Circle. The rate charged on first class goods, such as were involved in this controversy, is $1.07, being the through rate from Cincinnati to Atlanta, with the local rate of 30 cents per 100 from Atlanta to Social Circle, over the Georgia Railway, added thereto, making $1.37. The rate charged from Atlanta to Social Circle is the rate authorized by the Railway Commission of Georgia, and is the regular rate for local freight between those two points. When the freight is collected, the Georgia Railway retains its entire local rate, and the remainder of the $1.07 is divided between the other two roads, in proper proportion, according to an agreement between them.

"The question then is, does the fact that goods are shipped through from Cincinnati to Social Circle, that a through rate of freight is given by the initial carrier, that the goods are continuously transported over the three roads until they arrive at Social Circle, make it transportation subject to the fourth section of the Interstate Commerce Act, notwithstanding the fact that the Georgia Railway insists upon and receives its local rate, and has no arrangement for a joint tariff from Cincinnati to Social Circle, except that it allows the initial road (Cincinnati, New Orleans & Texas Pacific Railway) to make the rate as has been indicated, and in which it acquiesces, by receiving the goods and delivering them at Social Circle.

"*Conclusion.*—That the traffic from Cincinnati to Social Circle in issue here, as to the Georgia Railway Company, is local, and that company is not, on the facts presented, made a party to a joint or common arrangement, such as makes the traffic to Social Circle subject to the control of the Interstate Commerce Commission."

See, also, Ex Parte Koehler, 30 Fed. Rep., 86; Railway Company v. Osburn, 52 Fed. Rep., 912, where " line," as used in the Interstate Commerce Law, is defined.   The decision of Judge Pardee, in Cutting v. Florida Railway and Navigation Company, may be distinguished from the above cases, on the ground that he practically held in that case that there was an attempt, under the guise of local shipments, to evade the Interstate Commerce Law.

The conclusion reached in the case quoted from seems to accord with the decisions of our own Supreme Court on cognate questions.   In the Baird case, 75 Texas, 256, Chief Justice Stayton, in considering the evidence relied on to show a joint liability between connecting carriers, after quoting our statute requiring every railway company in this State to receive and forward merchandise from connecting carriers, said:  " In the face of such legislation, the evidence should show something more than that a through shipment was made, which would require the freight to pass over several lines of railway to its destination, that a price was fixed for the entire transportation, and collected by the last carrier, before it ought to be held that there was joint contract for transportation that would render each carrier liable for failure of duty on the part of other carriers in the connected lines."

While we have a statute which compels a carrier to receive goods from a connecting carrier, there is no law, State or Federal, which requires any carrier operating within this State to engage in the business of interstate carriage.   If appellant, as we think should be inferred from its motion and brief, was only engaged in carrying between Fort Worth and Decatur and other Texas points, and only received the coal at Fort Worth in obedience to the statute just referred to, as it would have received goods originally shipped from Fort Worth or other point in Texas, without any sort of understanding or arrangement, express or implied, that it should become a link in a chain of transportation from points beyond this State, we are of opinion that the mere fact that the shipment of coal in question was undertaken by the Missouri, Kansas & Texas Railway Company in the Indian Territory to Fort Worth, and thence to Decatur as its place of ultimate destination, did not bring the act of appellant in carrying the coal forward to Decatur within the scope of interstate commerce regulation.   It may be that while the Federal courts, as already seen, would hold that this transportation does not come within the scope of the Interstate Commerce Law, they would nevertheless hold it to be a carriage of interstate commerce, and therefore beyond the reach of State regulation.   Such a holding would, we think, tend to defeat the concurrent purpose of State and Federal legislation on this subject, which evidently is to prevent those conditions of inequality in the carrying service which result in extortion and discrimination, and to promote a uniform and just system of transportation throughout the country.

With the policy or impolicy of undertaking such legislation, as a court, we have nothing to do; but since it has been undertaken, it seems to us that that construction is not to be favored which leaves an important branch of this service unaffected by either Federal or State regulation. The common object in view should have its appropriate influence in construing such legislation, rather than a stubborn resistance to supposed encroachments upon Federal jurisdiction.

The conclusion reached in this case is not believed to be in conflict with the decision in Railway Company v. Sherwood, 84 Texas, 125; nor does the phase of the question herein considered seem to have been presented or expressly passed upon, though possibly involved, in the cases of Dillingham v. Fischl, 1 Texas Civil Appeals, 546, and Texas & Pacific Railway v. Clark, 4 Texas Civil Appeals, 611.

The judgment will be affirmed.

*Affirmed.*

Delivered March 14, 1894.