CHOLERTON *v.* DETROIT, JACKSON & CHICAGO RAILWAY.

1. CARRIERS—INTERSTATE COMMERCE — ELECTRICITY — MASTER AND SERVANT—STATUTES.

   In an action to recover damages for personal injuries sustained while plaintiff was employed by defendant interurban railroad as one of its bonding crew engaged in cleaning and wiring the ends of the rails of the tracks, where defendant owned and operated its railway wholly within the State and accepted freight to and from a point in another State on through bills of lading and collected charges for the full distance, *held*, that plaintiff was engaged in interstate commerce, within the Federal employers' liability act, 35 U. S. Stat. 65.

2. SAME—PERSONAL INJURIES—DAMAGES—INSTRUCTIONS.

   In an action by an interurban railroad employee under the Federal employers' liability act to recover for personal

injuries, where plaintiff claimed that he was injured as the result of the sudden starting of defendant's car while he was attempting to get upon it, and defendant claimed plaintiff attempted to board a moving car, and the court charged that under such claims and the evidence if defendant's claim was right plaintiff could recover nothing and if plaintiff's claim was right he could recover all the damages sustained, and in effect that no question of contributory negligence was involved, *held*, that the question whether plaintiff attempted to board a moving car was submitted to the jury, and it was not error to refuse an instruction on the diminution of damages because of contributory negligence of plaintiff.[1]

Error to Jackson; Parkinson, J. Submitted October 10, 1917. (Docket No. 77.) Decided December 28, 1917.

Case by Clifford H. Cholerton against the Detroit, Jackson & Chicago Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed

*W. S. Cobb* (*Corliss, Leete & Moody*, of counsel), for appellant.

*Lombard, Hext & Washburn* (*James J. Noon*, of counsel), for appellee.

MOORE, J. The defendant owns and operates an interurban electric railway, extending from Jackson to Detroit, with a branch line running from Ypsilanti to Saline, in Washtenaw county. The defendant runs no cars out of the State, and no cars from other States enter upon its road.

Defendant accepts freight to be shipped to Toledo, and receives shipments of freight from that city. The packages are turned over to another transportation

[1]Authorities discussing the question of constitutionality, application and effect of the Federal employers' liability act, see notes in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.

company at Detroit. Through bills of lading are made out for these shipments each way and charges collected for the full distance.

On the day of the accident, the plaintiff was working with what is known as the bonding crew. This crew consists of a motorman, conductor, and two men who work at cleaning the rails. In carrying on this work, a car with four wheels is used. This car was approximately eight feet in length and six feet in width, with canopy top, supported by uprights at each corner of the car. It was operated by electric motor, geared to run about twelve miles an hour. The crew rode from Ypsilanti on this car to their work. On one end of the car was a running board, and on the other a shallow box, in which material for their work was carried, and which was also used as a standing board. On this and the running board the men stood in riding on the car.

The work of bonding consisted of cleaning the ends of the rails, and then connecting them by wiring; the purpose being to provide an unbroken current through the rails. In preparing the rails for the bonding, the ends were cleaned by means of an emery wheel operated by a small armature attached to the trolley wire which was carried on the car from place to place by those in charge of the work. The plaintiff and another man performed the work of cleaning the rails.

On December 8, 1914, the crew left Ypsilanti on the bonding car. It was a run to a switch to make a clearance for a car over the line. All members of the crew rode to the switch. It being near the noon hour, the conductor and motorman boarded an electric car and went to Ypsilanti for their dinner. The other two men ate their dinner at the switch. Upon the return of the conductor and the motorman, they prepared to resume the work of bonding. The switch referred to is what is called a dead-end switch, and the car passes

out the way it enters. Three of the men boarded the car. The plaintiff went over and locked the section house. He testified that, after locking the section house, he crossed to the main track and walked toward the car which was standing on the main track, about 125 feet from him; that he walked toward the car when it started, and he stopped and waited for it to come where he was.

As to what occurred when the plaintiff undertook to board the car, the testimony is conflicting.

The plaintiff testified:

"The car came right up in front of me and stopped. * * * I was just ready to pull myself up with my left hand hold of the upright and the other foot on the ground."

He testified the car started suddenly while he was attempting to get on it, with the result that he was severely hurt.

The motorman testified the plaintiff tried to board the car while it was in motion.

The action is brought under the Federal liability act of April 22, 1908, which provides:

"Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative * * * for such injury or death, resulting in whole or in part from the negligence of any of the officers [or] agents or employees of such carrier" (U. S. Comp. Stat. 1916. § 8657).

The case was submitted to the jury by the trial court, resulting in a verdict and judgment for the plaintiff.

We quote from appellant's brief:

"Questions of Law:

"*First.* That the testimony failed to establish that the defendant was, at the time of the injury, engaged in interstate commerce within the meaning of the act under which this action is brought.

"*Second.* That the proofs failed to establish that the plaintiff was, at the time he was injured, engaged in interstate commerce, but, on the contrary, showed his injury resulted from a cause disconnected with his employment, while he was not in the performance of any services for the defendant.

"*Third.* That whether or not plaintiff was, at the time of his injury, engaged in interstate commerce, was, under the circumstances shown by the testimony at most a question of fact for the jury.

"*Fourth.* That the question of plaintiff's negligence should have been submitted to the jury, under the defendant's sixth request to charge."

The first three of these groups may be considered together. In 4 Words and Phrases, pp. 3725, 3726, it is said:

"Traffic is either State or interstate traffic according to its origin and destination. It is shipped by the consignor in the State where the consignee dwells, or it is not. If not, it is 'interstate traffic.' *Ft. Worth, etc., R. Co.* v. *Whitehead,* 26 S. W. 172, 6 Tex. Civ. App. 595. * * *

"A shipment may be interstate though transported by virtue of numerous bills of lading. If the purpose and intention is, when goods are shipped from St. Louis, that their final designation should be a point in Texas, it would be an interstate shipment, notwithstanding the transportation was not on a through bill of lading. *Gulf, etc., R. Co.* v. *Fort Grain Co.* (Tex.), 72 S. W. 419.' * * *

"The fact that several different and independent agencies are employed in transporting the commodity, some acting entirely in one State and some acting through two or more States, does in no respect affect the character of the transaction. To the extent in which each agency acts in that transportation it is subject to the regulation of congress. *The Daniel Ball,* 77 U. S. (10 Wall.) 557, 564."

In *Holmberg* v. *Railway Co.*, 188 Mich. 605 (155 N. W. 504), Justice STEERE, speaking for the court, said in part:

"While there is unusual conflict and contradiction in both the State and Federal authorities upon the question of when an employee of an interstate commerce road is or is not working under the provisions of the act, and even upon this direct question of track repair or improvements, it must be conceded the Federal authorities are controlling. The greatest number and latest decisions from that source have, we think, made a distinction between rolling stock, tools, and other appliances of a railroad which may or may not be used in its interstate service and its tracks, and settled the proposition that track maintenance or repairs not only facilitate, but are imperatively necessary to, all interstate commerce passing over the line; and the work of one engaged in such repairs is so directly connected and immediately beneficial to all commerce which uses the road that he must be regarded as covered by the act. *Pedersen* v. *Railroad Co.*, 229 U. S. 146 (33 Sup. Ct. 648, Am. & Eng. Ann. Cas. 1914C, 153) ; *Zikos* v. *Navigation Co.*, 179 Fed. 893; *Thomson* v. *Railroad Co.*, 205 Fed. 203; *Tralich* v. *Railway Co.*, 217 Fed. 675. In the latter case plaintiff was working on a steam shovel engaged in removing earth from the tracks and roadbed of a railroad which carried interstate merchandise."

See, also, *Collins* v. *Railroad Co.*, 193 Mich. 303 (159 N. W. 535).

We think plaintiff was engaged in interstate commerce.

We now come to group 4. Defendant's sixth request to charge reads:

"6. The defendant in this case claims the plaintiff was himself guilty of negligence contributing to his injury. I instruct you that contributory negligence is the negligent act of a plaintiff, which, concurring and co-operating with the negligent act of the defendant, is the proximate cause of the injury. If you find that the plaintiff was guilty of contributory negligence,

the act of congress, under which this suit is brought, provides that such contributory negligence shall not defeat a recovery altogether, but the damages to plaintiff shall be diminished in proportion to the amount of negligence attributable to plaintiff. So if you reach the question of damages in your deliberations, where you find it necessary to consider the defense of contributory negligence, I instruct you that the negligence of plaintiff, while not a bar to recovery, must be considered in diminution of the damages, and the actual damage you believe the plaintiff has sustained must be, by his contributory negligence, if you find he was guilty of such negligence, diminished in proportion of his negligence, as compared with the combined negligence of himself· and the defendant."

With reference to this request, the court said:

"Under the statute invoked in this case and when the evidence justifies it, the jury have the right to determine the degree of negligence on both sides, and even if a plaintiff is found to be guilty of some negligence or carelessness and the defendant also guilty of some negligence or carelessness, such negligence on each side contributing to the accident, the jury have the right, and it becomes its duty, to determine to what extent each was careless and so diminish a plaintiff's recovery in proportion to his own carelessness. But in this case I am not able to see how the damages, if any there be, can or should be divided or apportioned.

"Under the evidence in this case and the claims of the parties as here made and argued before you, I instruct you that, if the plaintiff has shown his right to recover at all, he is entitled to his full damages without any diminution. I say that because, as the case has been tried and argued and as it stands, if the plaintiff's theory is right, there is no evidence that he himself was careless and that his carelessness helped to bring about the injury. And if the defendant's claim is right, he is entirely responsible for his injury and is not entitled to recover a cent. But if he is entitled to recover at all, he can recover all the damages he has sustained, but if he is not entitled to recover at all, because he was trying to board a mov-

ing car, then your verdict is for the defendant and he gets nothing."

An examination of the record shows that defendant claimed it was not negligent for the reason that plaintiff attempted to board a moving car. This claim was supported by the positive testimony of the motorman and in part by the testimony of the conductor. It was the claim of plaintiff that the car had stopped when he attempted to get upon it, and while he was boarding it that it was suddenly started and he was thrown. This claim is supported by the positive testimony of the plaintiff, whose testimony is, at least in part, corroborated by the testimony of Mr. Mallion.

We have read with care the claim of counsel in relation to the testimony of Mr. Mallion and have read all of his testimony with care. When so read, we think the only fair conclusion to be drawn from it was that the car had stopped when the plaintiff attempted to board it, and that while exercising diligence in doing so the car was started. The issue was clear cut. Did plaintiff attempt to board a moving car or not? This was submitted to the jury, who found he did not. We find no reversible error.

Judgment is affirmed, with costs to the plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.