### THE ROBIN GOODFELLOW. THE ROBIN GRAY. THE ROBIN HOOD.

District Court, W. D. Washington, N. D. June 18, 1927.

Nos. 11279, 11389, 11467.

1. Shipping ⬱50—Under charter party, stevedore held employee of charterer, and vessel or owner not liable for his pay.

Under a charter party by which the owner was to pay expense of loading and discharging, but by an addenda the charterer agreed to "load and stow the cargo" at a fixed price, a stevedore employed by charterer to load and stow the cargo *held* an employee of the charterer, and not of the vessel, which was not liable for his hire.

2. Corporations ⬱456—Employment of stevedore to load cargo of lumber held within powers of lumber company, as "incidental" to its business of trafficking in lumber.

Where a lumber company was authorized by its articles of association to traffic in lumber, its employment of a stevedore to load a cargo of its lumber for interstate shipment was not ultra vires, as engaging in the business of stevedoring, but was within its powers as "incidental" to the main purpose of its organization (citing Words and Phrases, First Series, Traffic-Trafficking).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Incident —Incidental.]

In Admiralty. Suits by Rothschild & Co., Inc., against the steamship Robin Goodfellow and the Robin Line Steamship Company, against the steamship Robin Gray and the Robin Line Steamship Company, and against the steamship Robin Hood and the Seas Shipping Company. Dismissed.

The three cases were tried together. The issues are alike, except as to vessels and amount of cargo. The charter parties are identical as to the issue involved. Libelant, a stevedoring corporation, seeks to impress upon the respondent ship in each case charges for stevedoring services for loading and stowing cargo at the request of the lumber company. The owner claims that the loading was done by the lumber company on its own account, and that this service has been paid by the owner to the lumber company; the libelant contending that the lumber company was the agent for the owner, under the charter parties, and that it was employed by the owner, and that the business of stevedoring was not included in the memorandum of association of the lumber company, and its contract of stevedoring, if made, is ultra vires. Concisely stated, the object of the lumber company, as related to this issue, is to purchase, manufacture, traffic in, and carry on the business of timber and lumber. There is no reference to stevedoring.

The charter parties provide that steamers are to be furnished by the owners, who are to pay all port charges, harbor dues, wharfage, and/or berthing, a watchman at New York, and other customary charges and expenses of loading and discharging cargo. Clauses 13, 14, and 15, charter parties. Addenda, clause 14: "Steamer to allow charters five hundred ($500.00) dollars in full payment for tallyman and delivery clerks." In one charter party this amount is $600. The charterer agrees to furnish full cargo alongside and within reach of ship's tackle, at 300,000 board feet per "weather day," or days on which it is possible to load and discharge cargo. Clauses 5 and 8 and addenda E, charter parties.

Clause 15 of the charter party provides: "Cargo to be stowed under the master's supervision * * * and the stevedore to be employed by the steamer for loading and discharging, to be nominated by the charterers or their agents, at current rates." Addenda C: "In connection with clause 15, charterers agree to load and stow the cargo at one dollar and seventy cents ($1.70) per thousand board feet. * * * Charterers have the option of working overtime by paying all expenses in connection therewith; but, if owners elect to have steamer work overtime, it is understood this will be subject to charterers' approval, and all expenses in this case to be for owner's account."

There is a demurrage clause for each day the ship is detained by default of the charterers in loading or discharging.

William H. Gorham, of Seattle, Wash., for libelant.

Kerr, McCord & Ivey, of Seattle, Wash., for respondents.

NETERER, District Judge (after stating the facts as above). [1] The issue hinges upon the meaning of clause 15 and addenda C. If there is conflict, the addenda controls.

MacLachlan's Law of Merchant Shipping (6th Ed.) 309; Hellenic S. S. Co. v. Archibald (D. C.) 273 F. 290.

Clause 15 definitely provides for the stowing of the cargo under the master's supervision, and employment of stevedores for "*loading and discharging*," to be selected by the charterer, at *current rates*. The addenda changes two provisions of clause 15: (a) Definitely fixes the rate for loading at $1.70 per thousand board feet; and (b) *charterers agree to load and stow the cargo*. Addenda C has a further provision that charterers may work overtime by paying all expenses, and if the ship desires to work overtime, and the charterers consent, the expense of overtime shall be paid by the ship. This provision has reference only to loading by the charterers, and appears to definitely fix the status of the charterers as principal, and not as the agent in ship's employment. If the charterer was to be agent for the ship, the provision was unnecessary, as the stevedores would be the ship's employees, and the ship, of course, would have to pay overtime expense in all events. The provision of clause 15 and addenda C to me is plain. It does not appear ambiguous or to be susceptible to two constructions. The *$1.70* per thousand board feet cannot take the place of *current rates*, as it has reference only to loading, and the current rate applies to loading and discharging, and, specifically, the "*charterers agree to load and stow*."

The conduct of the parties is in harmony with this conclusion. A number of ships were covered by these charter parties, covering some period of time, and as in this case the charges for services were rendered to the charterers, and paid by the charterers, except in the instant case, which were not paid. Nor was any demand made upon the owners in this case until long after the service, and the lumber company, or charterer, was insolvent. [2] Of course it must be held as primer law that one contracting with a corporation is charged with knowledge of the legal limitations of its power (McCormick v. Market Bank, 165 U. S. 538, 17 S. Ct. 433, 41 L. Ed. 817), and that, while a corporation may do business in any place its charter allows and local laws permit (Baltimore & O. R. Co. v. Koontz, 104 U. S. 12, 26 L. Ed. 643), the corporation cannot move from the place of its creation to another sovereignty (Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 519, 10 L. Ed. 274), and that, when it does go into another sovereignty and is permitted to do business, its powers under its charter provisions are controlled and limited by the laws of its domicile (Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337). It is also fixed law that the business of stevedoring in stowing cargo is maritime engagement (Imbrovek v. Hamburg-American Steam Packet Co. [D. C.] 190 F. 229; International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 21, 71 L. Ed. ——), and the court judicially knows that the lumber company is a creature of an interior province.

What relation did the act of the lumber company in employing the libelant have to the objects stated in its memorandum of association? Was the employment incidental to the main object of the corporation?

"Traffic," 3 Bouv. Law Dict. p. 3307, says, is "the passing of goods or commodities from one person to another for an equivalent in goods or money; and a trafficker is one who traffics or a trader, a merchant. Senior v. Ratterman, 44 Ohio St. 673, 11 N. E. 321." Traffic may be "either state or interstate * * * according to its origin or destination"; if shipped by the consignor from one state or country to another, "it is interstate traffic. Fort Worth & D. C. Ry. Co. v. Whitehead, 6 Tex. Civ. App. 595, 26 S. W. 172, 173." 8 Words and Phrases, First Series, p. 7055.

"Incidental," obviously, means depending upon or appertaining to something else as primary. "Burrill's Law Dictionary defines 'incident' as 'belonging or appertaining to; following; depending upon another thing as more worthy. * * * A thing may be necessarily or inseparably incident to another, or usually so.' Webster defines it thus: 'Something necessarily appertaining to or depending on another, which is termed the principal.' Thomas v. Harmon, 46 Hun (N. Y.) 75, 77." 4 Words and Phrases, First Series, p. 3494.

Lord Dunevin, in Trustee of Harbor of Dundee v. Nicol, [1915] H. L. A. C. 550, said: "Incidental, in my view, means incident to the main purpose of the main business."

Delivery of lumber is incidental to sale or traffic, the main object; and delivery may be made in any customary manner. If traffic is interstate, it must be shipped in the usual and customary way. Loading lumber on a truck, a car, or a ship, for delivery in the usual way, is no doubt incidental to the business of trafficking in lumber; and the loading may be by the regular employees of the lumber company or by a special employee. Employing libelant to load its lumber in carrying forward its business in the lumber traffic by the lumber company, is not engaging in the business of stevedoring, even though a small per cent. (less than 4 per cent., I think the testimony

shows) of the cargo did not belong to the charterer, but to others to whom space had been given. The English cases cited by libelant on incidental powers, I think, are not out of harmony with this conclusion. Attorney Gen. v. Mercer Ry., [1907] L. R. 1 Ch. D. 81, reversed by the House of Lords, [1907] L. R. Appeal Cases, 415; Ashbury Ry. Corp. & Tram Co. v. Riche, L. R. 7 H. L. 653; London County Council v. Atty. Gen., [1902] L. R. App. Cas. 165. See, also, Sewell v. B. C. Towing & Transportation Co. (1884) 9 S. C. 527.

The libels must be dismissed.