TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-905 |
| of | : | |
| | : | August 9, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE CONTRACTORS STATE LICENSE BOARD has requested an opinion on the following questions:

1.  Is Amtrak exempt from the requirements of the Contractors License Law when it performs track maintenance work in operating the commuter trains for the North San Diego County Transit Development Board pursuant to contract?

2.  Is Pacific Bell exempt from the requirements of the Contractors License Law when it installs and maintains telephone wires in and on the property of private and public entities where it does not have a proprietary (ownership, lease, or easement) right?

CONCLUSIONS

1.  Amtrak is exempt from the requirements of the Contractors License Law when it performs track maintenance work in operating the commuter trains for the North San Diego County Transit Development Board pursuant to contract.

2.  Pacific Bell is exempt from the requirements of the Contractors License Law when it installs and maintains telephone wires in and on the property of private and public entities where it does not have a proprietary (ownership, lease, or easement) right.

ANALYSIS

The Contractors State License Law (Bus. & Prof. Code, §§ 7000-7189.7; "Law")[1] "reflects a strong public policy in favor of protecting the public against unscrupulous and/or incompetent contracting work." (*Vallejo Development Co.* v. *Beck Development Co.* (1994) 24 Cal.App.4th 929, 938.) "The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." (*Hydrotech Systems*, *Ltd.* v. *Oasis Waterpark* (1991) 52 Cal.3d 988, 995.)

It is a misdemeanor for any person to engage in the business or act in the capacity of a contractor without being properly licensed, unless the person is particularly exempted from the Law's provisions. (§ 7028.) Exemptions from licensure are provided for public or governmental representatives (§ 7040), nonprofit organizations providing weatherization services to low income families (§ 7040.1), public utilities (§§ 7042, 7042.1, 7042.5), and owners of property doing the work themselves (§ 7044), among others.

The two questions presented for resolution concern the exemption language of section 7042.5, which provides:

"This chapter does not apply to public utilities operating under the regulation of the Public Utilities Commission on construction, maintenance, and development work incidental to their own business . . . ."

We are requested to consider (1) whether Amtrak, the National Railroad Passenger Corporation, is exempt from the licensure requirements of the Law with respect to maintenance work performed under contract in operating commuter trains in San Diego County and (2) whether Pacific Bell is exempt from licensure when installing and maintaining telephone lines on private and public property where it has no proprietary interest. Both entities are public utilities regulated by the Public Utilities Commission ("Commission").[2] The primary issue involved in each inquiry is whether the exemption language of section 7042.5 requires that the work be performed on the public utility's own property. We conclude

---

[1] All references hereafter to the Business and Professions Code are by section number only.

[2] The Commission is an agency of the State of California, created by section 1 of article XII of the Constitution. (Pub. Util. Code, § 20.) The Commission regulates every public utility in the state. (Pub. Util. Code, § 701.) Public Utilities Code section 216, subdivision (a) provides:

"`Public utility' includes every common carrier, toll bridge corporation, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, sewer system corporation, and heat corporation, where the service is performed for, or the commodity is delivered to, the public or any portion thereof."

that Amtrak and Pacific Bell are exempt from licensure even though they have no proprietary interest in the property upon which the work is performed.

### 1.  The National Railroad Passenger Corporation (Amtrak)

The first question deals with the railroad operations of Amtrak.  Amtrak was created by an act of Congress as a rail carrier operating as a for profit corporation with its principal office in the District of Columbia.  (49 U.S.C. § 24301.)  It is subject to federal regulations and orders regarding railroad safety.  (49 U.S.C. §§ 20101, 20103.)  As a railroad corporation (Pub. Util. Code, § 230), it is a common carrier (Pub. Util. Code, § 211, subd. (a)), and thus a public utility (Pub. Util. Code, § 216, subd. (a)) operating under regulation of the Commission with respect to its activities in California.

The North San Diego County Transit Development Board ("Board") has contracted with Amtrak for the management, maintenance, and operation of its 43-mile commuter rail service from Oceanside to San Diego.  Amtrak operates the commuter trains for the Board.  The maintenance work is of a type routinely performed by Amtrak in its operations as a railroad in other locations throughout the United States.  These responsibilities include providing a safe, well-maintained track and signal system, and providing trained and qualified individuals to inspect and maintain all track, signal, and communications facilities.

The contractual work performed by Amtrak in the maintenance of the railroad track (leased by the Board from the Santa Fe Railroad) would normally require Amtrak to have a contractor's license.  A "contractor" subject to the Law's requirements is defined in part as a "person, who undertakes to . . . construct, alter, repair . . . any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement . . . ."

Amtrak is exempt from the Law if the work in question is "incidental to [its] own business."  (§ 7042.5.)  Amtrak's business is defined by Congress as including the authority to "acquire, operate, maintain, and make contracts for the operation and maintenance of equipment and facilities necessary for, among other functions, intercity and commuter rail passenger transportation." (49 U.S.C. § 24305(a).)  The term "facility" includes "rail line, right of way, fixed equipment, facility, or real property related to a rail line, right of way, fixed equipment, or facility, including a signal system, passenger station and repair tracks. . . ." (49 U.S.C. § 24309(a)(1).)

We believe that railroad maintenance work is not only "incidental" to Amtrak's business, it *is* Amtrak's business as defined by Congress.  That the Board may also be in the "business" of providing rail service is irrelevant.  So also is the fact that the tracks do not belong to Amtrak.  The only issue here is whether Amtrak's business includes track maintenance work.  Since it does, the contract in question clearly comes within the exemption language of section 7042.5.

It follows that the Board is not precluded from awarding a contract to Amtrak under the terms of section 7028.15, which provides:

"(a) It is a misdemeanor for any person to submit a bid to a public agency in order to engage in the business or act in the capacity of a contractor within this state without having a license therefor, except in any of the following cases:

"(1)   The person is particularly exempted from this chapter.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e)   Unless one of the foregoing exceptions applies, a bid submitted to a public agency by a contractor who is not licensed in accordance with this chapter shall be considered nonresponsive and shall be rejected by the public agency.   Unless one of the foregoing exemptions applies, a local agency shall, before awarding a contract or issuing a purchase order, verify that the contractor was properly licensed when the contractor submitted the bid. . . ."

Because Amtrak is exempt from the requirements of the Law in performing track maintenance work for the Board (§ 7042.5), the contract between the two is valid under the terms of section 7028.15.

Finally we note that the purposes of the Law are served due to the regulation of Amtrak by the Commission.   Amtrak must comply with both federal and state requirements in performing track maintenance for the Board.   The Commission's responsibilities include protecting the public from incompetence and dishonesty in the performance of the contracting work by Amtrak.   The safety division of the Commission is "responsible for inspection, surveillance, and investigation of the rights-of-way, facilities, equipment, and operations of railroads. . . ."   (Pub. Util. Code, § 309.7.) Federally certified Commission rail inspectors enforce compliance with state and federal safety regulations.   (49 U.S.C. § 20105; Pub. Util. Code, § 765.5, subd. (e).)

We conclude in answer to the first question that Amtrak is exempt from the requirements of the Law when it performs track maintenance work in operating the commuter trains for the Board pursuant to contract.

2.   Pacific Bell

The second question presented concerns the maintenance of telephone wires by Pacific Bell.  Pacific Bell is a telephone corporation engaged in providing voice and data communications transport through a series of connected wires, known as networks.   Interstate and foreign communications are regulated by the Federal Communications Commission (47 U.S.C. § 152(a)), and charges, classifications, practices, services, and regulations in connection with intrastate communications are regulated by the Commission (47 U.S.C. § 152(b); Pub. Util. Code, §§ 701, 761). As a telephone corporation, Pacific Bell is a public utility (Pub. Util. Code, § 216) operating under regulation of the Commission.

Wiring inside a customer's premises is specifically subject to state regulation.[3] Generally inside wire is the telephone wire that connects the equipment at the customer's premises to the telephone network. Pacific Bell is required by the Commission to include installation and maintenance of inside wire as one of its services, and its installation and repair services must meet national, state, and local industry minimum safety, transmission, installation, and material quality standards.[4]

The installation and maintenance of telephone wires in and on the property of private and public entities would normally require a contractor's license. (§ 7026; see 59 Ops.Cal.Atty.Gen. 424, 426-428 (1976).) However, Pacific Bell is entitled to the exemption of section 7042.5 as a public utility operating under the regulation of the Commission for any work that qualifies as "construction, maintenance, and development work incidental to [its] own business . . . ."

The installation and maintenance of telephone wires in and on a customer's premises is necessary for the customer to gain access to Pacific Bell's communications network. As such, Pacific Bell's primary business, providing voice and data communications transport through telephone wires, is dependant upon the connection of these wires inside the customer's premises to the telecommunications network. Thus Pacific Bell's installation and maintenance of these wires is clearly "incidental" to its business within the meaning of section 7042.5.

In *Kelly* v. *Hill* (1951) 104 Cal.App.2d 61, the court examined a licensure exemption similar to section 7042.5 for "construction . . . incidental . . . to farming . . ." contained in section 7049. The court concluded that the installation of a concrete pipeline upon agricultural land to irrigate crops met the statutory language, stating:

> "`"Incidental" obviously means depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal, something incidental to the main purpose. The Robin Goodfellow, D. C. Wash., 20 F.2d 924-925.'" (*Id.*, at p. 65.)

As indicated in answer to the first question, it is irrelevant for purposes of section 7042.5 whether the public utility owns the property (whether railroad tracks or telephone wires) which it maintains as part of its business. The statute imposes no such requirement. Indeed, section 7042.5 would be superfluous and unnecessary if the public utility were required to own the property maintained, since section 7044 provides an exemption for owners of property who perform the work themselves.

---

[3] The Federal Communications Commission "may preempt state regulation of the installation and maintenance of simple inside wiring, but only to the extent that such regulation negates the federal policy of ensuring a competitive market in such services." (*National Ass'n of Reg. Utility Com'rs* v. *F.C.C.* (D.C. Cir. 1989) 880 F.2d 422, 431.)

[4] Under the Commission's regulations, a building owner may also choose a source other than Pacific Bell for installation, maintenance, and repair of cable, wire, jacks, and distribution terminals connecting his or her facility to the telephone network.

Also as indicated in response to the first question, the Commission acts to protect the public from incompetence and dishonesty with respect to the maintenance work at issue. (Pub. Util. Code, §§ 761, 768.) The purposes of the Law are thus protected even thought Pacific Bell is not required to have a contractor's license in maintaining its customers' inside wiring.

In answer to the second question, therefore, we conclude that Pacific Bell is exempt from the requirements of the Law when it installs and maintains telephone wires in and on the property of private and public entities where it does not have a proprietary (ownership, lease, or easement) interest.

\* \* \* \* \*